OPINION OF THE COURT
Judith J. Gische, J.
Jo Ann Douglas, Law Guardian for all E. children except M. E.,[1] previously moved: (1) to preclude defendant from using privileged information obtained from her client’s documents and that such documents be turned over to her, (2) for sanctions against defendant and his attorney, (3) for a judgment for unpaid legal fees due her, and (4) to stay all further proceedings until such time as defendant complies with this court’s order regarding payment to her. When the motion was originally submitted to this court, defendant raised technical defenses and declined to consider Ms. Douglas’ motion on its merits. By order dated January 20, 1998 the court mooted the technical opposition to Ms. Douglas’ motion and gave defendant an opportunity to oppose the relief requested on its merits. Plaintiff supports the relief requested by the Law Guardian.
Defendant submitted opposition and cross-moved for: (1) sanctions against Ms. Douglas, (2) attorney’s fees, and (3) a court order referring the Law Guardian to the disciplinary committee. The law offices of Raoul Felder, Law Guardian for M. E., take no position on the instant motion and cross motion.
DISCUSSION
Ms. Douglas’ Request for the Payment of Fees
Ms. Douglas seeks certain relief relative to the payment of her fees and expenses. She seeks a judgment against defendant and a direction that the case not proceed unless and until *274 defendant satisfies the judgment. At the time this motion was made, Ms. Douglas had billed in excess of $24,000 representing fees and expenses.[2] Pursuant to the parties’ stipulation dated October 7, 1997, the parties agreed that a Law Guardian would be appointed to represent the interests of the nine E. children. Almost at the outset the court indicated that with so many children there was a possibility that more than one Law Guardian would be necessary. Consideration of many factors, including cost, resulted in the agreement that only one person should initially be selected for all of the children.
In accordance with the parties’ agreement, on October 14, 1997, the court issued an order appointing Ms. Douglas and indicating that until the issue of apportionment was determined at trial, defendant would be responsible to pay the Law Guardian’s fees. By order dated December 2, 1997, the court relieved Ms. Douglas as Law Guardian for M. E. but continued her as Law Guardian for the eight remaining children.[3] It is undisputed that no part of the Law Guardian’s fees have been paid since Ms. Douglas’ appointment. According to his net worth statement, defendant, an unemployed physician, has income in the form of nontaxed disability insurance of $7,650 per month. He also earns monthly income from a family business. In addition it appears that although defendant does not work, the children’s private school tuition is subsidized by plaintiffs teaching. Plaintiff also reports no employment and no income. Moreover, it was represented at the outset of these proceedings that the parties’ respective parents were paying the parties’ own legal fees.[4] Finally given the parties’ lifestyle there are significant issues of imputed income from family gifts and other possible sources.
Defendant raises numerous arguments in opposition to Ms. Douglas’ motion. They include that: defendant believed that Ms. Douglas would be paid as part of the 18-B panel (County *275 Law art 18-B); defendant believed that Ms. Douglas would be paid at 18-B rates; defendant claims that Ms. Douglas is operating under an impediment and that, therefore, she is not entitled to any compensation; and defendant contests the rate and the hours and demands a hearing. The court will address these issues seriatim.
There is no support in this record for defendant’s belief that New York State would pay the costs of hiring an attorney for the parties’ children in the context of the parties’ dispute over custody and visitation. Until this motion was made, defendant never raised any application to have the Law Guardian’s fees paid by the State. It was not preserved in the October 7, 1997 stipulation; nor was it raised in response to the court’s October 14, 1997 order which expressly made defendant responsible for payment subject to re apportionment at trial. (Lande v Lande, 239 AD2d 563 [2d Dept 1997]; Rotta v Rotta, 233 AD2d 152 [1st Dept 1996].) Any claim of financial inability to pay was not preserved.
Moreover, although defendant claims that it is a financial hardship for him to pay such fees, the parties’ over-all financial situation is not one that would justify the State assuming such cost. Other than claiming financial hardship in supporting a large family, defendant does not prima facie demonstrate financial inability.
There is likewise no support in the record for any assumption that the Law Guardian was to be paid at 18-B rates. Those rates are currently $40 per hour, substantially below market rates and were intended as a means of providing legal assistance to indigent litigants.[5] The rates were established to assure counsel for persons who could not otherwise afford counsel and they are reduced rates to be paid for by the State. There is no basis for nonindigent private parties to have their litigation subsidized at bargain rates. At bar the parties have demonstrated an ability to retain counsel for themselves of substantial experience and standing within the matrimonial Bar. The parties’ children should likewise be entitled to counsel with expertise and experience to adequately protect their rights. The Law Guardian is entitled to be paid for the reasonable value of her services. (Stephens v Stephens, 249 AD2d 191]; Gadomski v Gadomski, 245 AD2d 579 [3d Dept 1997].)
*276 Defendant also argues that the Law Guardian is operating under an impediment which requires her disqualification. He argues that due to such impediment, she is not entitled to any compensation. The court need not repeat the issues relative to disqualification in this motion. They were fully considered and rejected by the court in its decision dated January 20, 1998. The court held that there was no conflict of interest in Ms. Douglas continuing as Law Guardian for the remaining eight E. children, even after the court relieved her as Law Guardian for M. E. Although such decision is currently being appealed, the Appellate Division denied defendant’s application for a stay and no stay has been issued by this court.
It is evident that throughout this proceeding Ms. Douglas has continued to act pursuant to a lawful order of appointment. Even if defendant is successful in removing Ms. Douglas as Law Guardian for the eight E. children, she would still be entitled to compensation for the services she provided prior to any order relieving her. (Benatovich v Benatovich, 231 AD2d 880 [4th Dept 1996].) Thus there is no impediment to Ms. Douglas getting paid for the services she has already rendered.
Defendant argues that he is entitled to a hearing to determine the reasonableness of the compensation sought by Ms. Douglas. The appellate cases support the need for a hearing before the court makes a final award of fees to a Law Guardian. (Petek v Petek, 239 AD2d 327 [2d Dept 1997]; Gadomski v Gadomski, supra; Lande v Lande, supra.) Defendant is therefore entitled to a hearing on Ms. Douglas’ fees. The issue remains, however, whether the court should conduct an interim hearing on fees or wait until the conclusion of the trial.
In general, holding interim hearings of this nature only detracts from the time and resources necessary to resolve the underlying issues in the litigation. Moreover, any interim hearing will not necessarily foreclose the need for additional hearings on fees at the conclusion of the case.
Domestic Relations Law § 237 supports making interim awards of attorney’s fees in matrimonial actions if necessary to ensure adequate representation of a party in a matrimonial matter. (Sonnier v Pope, NYLJ, June 3, 1997, at 25, col 6 [Sup Ct, NY County] [and cases cited therein].) Likewise a child’s right to representation should not be compromised by the parties’ unwillingness to pay a Law Guardian. The. potential for abuse by a party withholding a Law Guardian’s payment when *277 he or she does not agree with the position taken by a Law Guardian is apparent. At bar, the litigation has already been extensive, yet the parties are nowhere near to resolution of the issues in dispute.[6] The Law Guardian already claims a large amount due her and the court cannot in good conscience require her to continue to carry this case without being paid.[7]
In balancing the competing interests of interim payment to the Law Guardian in this hotly contested case with the inefficiency of conducting multiple interim hearings on collateral matters, the court hereby grants Ms. Douglas’ motion to the extent of directing defendant to pay the sum of $24,000 to Ms. Douglas on account of her legal fees and without prejudice to the court’s determination of the full amount of fees due her at the conclusion of this action. The $24,000 shall be an unallocated retainer. It is without prejudice to any further reasonable applications for additional retainer amounts as the case proceeds. Such amount shall be paid within 30 days after service of this order with notice of its entry.
There is ample support in the record for such a retainer at this time. (See, Petek v Petek, supra.) Ms. Douglas has already expended considerable time in this case. Indeed her time is far in excess of what was originally claimed on this motion due to subsequent motions, court appearances and appeals. Thus she is already owed fees, even though the exact amount is subject to dispute. There is every indication that additional attorney time will be spent on behalf of the children, since forensic evaluations are underway and there has not yet been any adjudication of the custody and visitation issues. Moreover, there is already precedent that such a retainer is reasonable in the context of this case. When Mr. Felder was retained to act as Law Guardian for M. E., a private agreement was reached in which Mr. Felder received a $25,000 retainer. Ms. Douglas has responsibilities to eight children in this case. Taking into consideration time already spent and the prospect of future litigation, the payment of $24,000 on account is reasonable.
In the event defendant fails to pay the retainer in accordance with this court’s decision, the clerk is directed to enter a *278 judgment for such amount upon Ms. Douglas filing an affidavit of noncompliance. (Domestic Relations Law § 244; Stephens v Stephens, supra.) This is in addition to Ms. Douglas moving for any other available remedy, including contempt and a stay of defendant’s right to go forward with his claims for custody and/or increased visitation until the contempt is purged. (Wolf v Wolf, 50 AD2d 740 [1st Dept 1975]; Naveja v Naveja, 110 Misc 279 [Sup Ct, Queens County 1920]; Moncrief v Moncrief, 155 NYS 592 [Sup Ct, NY County 1915].)

. Ms. Douglas presently represents eight children.

. Since the time the motion was made in December 1997, the court is aware that many additional hours were spent by Ms. Douglas on this case which include but are not limited to a motion to strike one child’s privileged communications with her attorney from defendant’s papers, a motion to increase defendant’s visitation with the children, responding to a cross motion for sanctions brought against her and, I am informed, appeals of various orders of this court.

. The circumstances of Ms. Douglas being released as Law Guardian for M. E. are set forth in this court’s orders of December 2, 1997 and January 20, 1998 and need not be repeated here.

. Paragraph 25 of Ms. Sheps’ February 1, 1998 affidavit reacknowledges this fact.

. There is currently a proposal before the Albany Legislature to raise such hourly fees on 18-B cases. (Wise, New Push for Higher 18-B Rates, NYU, Apr. 13, 1998, at 1, col 3.)

. The court’s docket reflects 11 separate motions made in this case. This number does not include all of the cross motions made (which are not separately docketed in the court computer) or applications made orally before the court.

. Defendant’s own counsel would not agree to stay on this case without receiving payment. On April 9, 1998 in open court, defendant discharged his own attorney after she represented that fees were owed to her.